Ty Hyderally, Esq. (ID#: 02323-1993)
HYDERALLY & ASSOCIATES, P.C.
33 PLYMOUTH STREET
SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Arthur McCallum

SUPERIOR COURT BERGEN COUNTY
FILED
APR 27 2017
DEPUTY CLERK

| | |
|---|---|
| ARTHUR McCALLUM,<br><br>PLAINTIFF,<br><br>VS.<br><br>PROACTIVE LIGHTING SOLUTIONS, LLC, GREEN RG MANAGEMENT, ALFRED HEYER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, AND CHRISTOPHER MYERS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>DEFENDANTS. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO.: L-2979-17<br><br>CIVIL ACTION<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Arthur McCallum ("McCallum" or "Plaintiff"), a resident of the state of New York, by way of his Complaint against Defendants, Proactive Lighting Solutions, LLC, Green RG Management, Alfred Heyer, individually and in his official capacity, and Christopher Myers, individually and in his official capacity, John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

### I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Wage and Hour Law, *N.J.S.A.* 34:11-56a *et seq.* ("NJWHL"); (2) a violation of the New Jersey Wage Payment Act, *N.J.S.A.* 34:11-4.1, *et seq.* ("NJWPA"); (3) a violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); and (4) a violation of FLSA (Retaliation); (5) a violation of the Conscientious Employee

  Protection Act, N.J.S.A. 34:19-1, *et seq.* ("CEPA"); (6) Constructive Discharge; (7) Breach of Implied Contract, and (8) Promissory Estoppel.

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3. Venue is appropriate in this court since Plaintiff worked in Bergen County during the relevant time period, the Defendants have a place of business in Bergen County, and either some or all of the causes of action accrued in Bergen County, New Jersey.

## II. Parties

4. During the relevant time period, McCallum was an employee of Defendant Proactive Lighting Solutions, LLC ("Proactive Lighting") and worked in the states of New Jersey and New York.

5. Proactive Lighting is a lighting sales and distribution company with a business address at 21 Ewing Avenue, North Arlington, New Jersey 07031.

6. During the relevant time period, Alfred Heyer ("Heyer") was the Sole Managing Member of Proactive Lighting.

7. Thus, during the relevant time period, Heyer was a member of management who controlled Plaintiff's workplace and supervised Plaintiff and (1) aided the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

8. During the relevant time period, Christopher Myers ("Myers") worked for Proactive Lighting and was McCallum's direct supervisor.

9. Thus, during the relevant time period, Myers controlled Plaintiff's workplace and supervised Plaintiff. Myers also (1) aided the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

10. Upon information and belief, Defendant Green RG Management is owned by Defendants Proactive Lighting and/or Heyer and does business as Proactive Lighting.

2

11. Thus, Green RG Management is a joint employer of McCallum and is jointly responsible for the debts and liabilities of Proactive Lighting.
12. Green RG Management and Proactive Lighting share the same business address, engage in the same business and operate within the same physical facilities and location.
13. Green RG Management and Proactive Lighting share common officers, agents, and managers, who serve in the same capacity for each company.
14. Green RG Management and Proactive Lighting have common owners and employees.
15. Despite attempts to avoid responsibility, Green RG Management is and should be responsible for the debts owing by Proactive Lighting, including the claims herein.
16. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, defendants ratified, embraced and added to this conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.
17. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.
18. Thus, all the defendants are subject to suit under the statutes alleged above.
19. At all times referred to in this Complaint, employees of the corporate defendant, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate defendants ratified, embraced and added to their conduct.

## III. Factual Allegations

20. In July 2014, McCallum was hired by Proactive Lighting pursuant to a contract between Proactive Lighting and Emerging Market Partners ("EMP").
21. McCallum was hired as a Manager and was responsible for the overall development of sales processes, construction and maintenance of Proactive Lighting's website, oversight of finance, technical auditing, and preparation of energy sales marketing materials and bid proposals.
22. At all material times herein, McCallum performed his duties in an exemplary fashion and consistently met or exceeded all of Defendants' legitimate expectations.
23. Defendants agreed to pay McCallum $134,200 annually.
24. McCallum was also entitled to reimbursement of his business expenses in accordance with Defendants' practices and policy.
25. In early 2015, Proactive Lighting hired Defendant Myers as a Chief Operating Officer through Global Resource Advisors, LLC.
26. Upon information and belief, during all relevant times, Myers was the President of Global Resource Advisors, LLC.
27. During this time, Myers became McCallum's immediate supervisor and direct report.
28. Myers also was the individual responsible for payment of salaries to employees of the Defendant corporations.
29. Shortly thereafter, McCallum's administrative responsibilities were given to Myers.
30. Around the same time, Defendants failed to pay McCallum his full amount of wages when due.
31. From this time until McCallum's constructive discharge on December 7, 2016, Defendants, without advance notice or warning, willfully failed to pay McCallum his proper wages when lawfully due.
32. Accordingly, from February 2016 through December 2016, McCallum had numerous conversations with Heyer and Myers about his unpaid wages. Subsequently Heyer or Meyers told McCallum that he would get paid, and that they would take care of him.
33. Despite this, McCallum's wages remained outstanding by Defendants as Heyer and Meyers refused to take curative action.

34. On November 9, 2016, McCallum sent an email to Christiane Roghanian ("Roghanian") requesting an updated tally of his unpaid wages owed by Defendants. (Exhibit "1").

35. On November 10, 2016, Roghanian sent an email reply to McCallum with a spreadsheet attached, which showed McCallum was owed $56,026.3 as of November 9, 2016, from Proactive Lighting. (Exhibit "1").

36. On or about November 22, 2016, McCallum sent an email to Heyer, Meyer and Ehud "Udi" Laska ("Laska") demanding payment of his outstanding salary and expenses, which totaled roughly $62,000.00 at the time. (Exhibit "2").

37. McCallum also complained in his November 22, 2016 email that he could not continue to work, for Proactive Lighting, without pay. (Exhibit "2")

38. On December 1, 2016, Heyer sent an email from his Green RG Management email address to Tom Haydu, Roghanian, Philip Rybin, Donald Ryan, and Jack Burke entitled, "update." (Exhibit "3").

39. In this email, Heyer admitted Proactive Lighting had failed to pay wages. (Exhibit "3").

40. Upon information and belief, during the time period of McCallum's complaints, Defendants hired new individuals to work for Proactive Lighting, such as Jeff Rosenberg and Caitlin Ochs, but continued to refuse to pay McCallum his overdue wages.

41. Rather than take curative action, Defendants' retaliated against McCallum for objecting to Defendants' illegal practices by refusing to compensate McCallum properly and cause the constructive termination of December 7, 2016. This retaliatory act by Defendants creates and satisfies the specific factual predicate for the CEPA violation alleged herein.

42. Thus, on or about December 7, 2016, due to the ongoing situation, the conditions of work were so intolerable that McCallum felt he had no choice, but to terminate his employment.

43. Accordingly, on December 13, 2016, McCallum sent an email to Heyer, Myers, and Laska again demanding payment of his unpaid wages and reimbursement for his unpaid business expenses in the amount of $66,447. (Exhibit "4")

44. On December 14, 2016, McCallum retained counsel who wrote to Defendants on behalf of McCallum demanding payment in the amount of $66,447 representing McCallum's back salary and expenses. (Exhibit "5")

45. The December 14, 2016 letter specified Defendants' multiple illegal acts. For example, despite Defendants' failure to pay McCallum his lawful wages, Defendants nonetheless made payments to its related entities, Zuriel, LLC and Global Resource Advisors, LLC. Further, Defendants were not properly withholding and paying income taxes to the appropriate taxing authorities and were engaging in other improprieties pertaining to the health insurance and other benefits of Proactive Lighting's employees. (Exhibit "5")

46. On December 20, 2016, McCallum sent a follow-up email to Heyer, Myers and Laska again demanding payment of his outstanding wages. However, Defendants failed to respond to McCallum's December 20, 2016 email. (Exhibit "6").

47. On December 21, 2016, Myers sent an email to McCallum acknowledging McCallum's attorney letter, but failed to make payment to McCallum. (Exhibit "7").

48. To date, no payment has been made by Defendants to McCallum

49. Thus, as of date of the date of his constructive discharge, December 7, 2016, McCallum is owed approximately $70,000.00 in unpaid wages, exclusive of liquidated and other related damages.

## Count I
## (NJ WHL)

50. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
51. The actions of Defendants give rise to violations of the New Jersey Wage and Hour Law.
52. The Defendants failed to make, keep or preserve any records as required under this statute.
53. Plaintiff was not paid for all hours worked.
54. Defendants' actions to violate the law were done intentionally and with malice.
55. Defendants retaliated against Plaintiff for his complaints to them that he was not properly paid wages by Defendants in accordance with the law.
56. Further, Plaintiff has been required to retain counsel to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count II
## (NJ WPA)

57. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
58. The actions of Defendants give rise to a violation of the New Jersey Wage Payment Act.

6

59. Under *N.J.S.A.* 34:11-4.2, every employer shall pay the full amount of wages due to his employees at least twice during each calendar month, on regular pay days designated in advance by the employer, in lawful money of the United States or with checks on banks where suitable arrangements are made for the cashing of such checks by employees without difficulty and for the full amount for which they are drawn.
60. Defendants continuously failed to pay Plaintiff his full amount of wages when lawfully due.
61. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count III
### (FLSA)

62. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
63. Defendants failed to keep proper records in violation of FLSA.
64. Defendants failed to pay to Plaintiff his proper wages when due.
65. Defendants allowed Plaintiff to suffer and permit work without proper compensation.
66. Defendants willfully failed to pay Plaintiff's for all hours worked as agreed and/or promised.
67. These wrongful actions of Defendants give rise to violations of FLSA.
68. Defendants' actions to violate the law were done intentionally and with malice.
69. Defendants perpetrated "willful" violations of the FLSA.
70. Accordingly, Plaintiff is entitled to liquidated damages under FLSA.
71. Further, Plaintiff has been required to retain counsel to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count IV
### (FLSA)
### (Retaliation)

72. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
73. The actions of Defendants give rise to a violation of the anti-retaliation provision of FLSA.
74. Section 15(a)(3) of FLSA prohibits retaliation by employers against employees for

asserting their rights under FLSA.

75. Plaintiff engaged in activity protected by FLSA, suffered an adverse action by the employer as a proximate and/or motivating reason for the exercise of Plaintiff's exercise of his rights under FLSA.

76. Further, Plaintiff has been required to retain counsel to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count V
## (CEPA)

77. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint, unless noted below.

78. Plaintiff reasonably believed that Defendants conduct was violating either a law, regulation, or a clear mandate of public policy by failing to make proper payment of wages in compliance with New Jersey law.

79. Plaintiff also objected to Defendants' self-dealing, including the intermingling of funds between Proactive Lighting, Green RG Management and other related companies to avoid liability to their employees and creditors and their failure to observe corporate formalities as govern by statute and to act reasonably and in good-faith in the interest of Proactive Lighting and its employees.

80. Second, Plaintiff objected to this unlawful conduct, and disclosed the unlawful conduct to Defendants in numerous communications to Defendants.

81. Third, Plaintiff suffered an adverse employment action.

82. Rather than take curative action, Defendants' retaliated against McCallum for objecting to Defendants' illegal practices by refusing to compensate McCallum properly and cause the constructive termination of December 7, 2016. This retaliatory act by Defendants creates and satisfies the specific factual predicate for the CEPA violation alleged herein.

83. Fourth, Defendants retaliated against Plaintiff because Plaintiff did one or more of the following:

(a) Disclosed or threatened to disclose to a supervisor or a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the Plaintiff reasonably believed is in violation of a law, or a rule or regulation promulgated pursuant to law;

8

(b) Provided information to, or testified before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship; or

(c) Objected to, or refused to participate in an activity, policy or practice which Plaintiff reasonably believed:
   (i) is in violation of a law, or a rule or regulation promulgated pursuant to law; or
   (ii) is fraudulent or criminal; or
   (iii) is incompatible with a clear mandate of a public policy concerning the health, safety, or welfare or protection of the environment.

84. The above actions of Defendants demonstrate that they are in violation of CEPA.

85. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

86. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VI
### (Constructive Discharge)

87. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

88. The actions of Defendants give rise to the claim of constructive discharge.

89. Defendants created intolerable work conditions, including but not limited to, their failure to pay to Plaintiff his lawful wages when due, their reduction of Plaintiff's salary without warning or notice and their transfer of Plaintiff's job responsibilities all of which Plaintiff felt compelled to resign his employment with Defendants.

9

90. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

91. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VII
### (Breach of Implied Contract)

148. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
149. The actions of Defendants give rise to the claim of implied breach of contract.
150. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.
151. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VIII
### (Promissory Estoppel)

152. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
153. The actions of Defendants give rise to the claim of promissory estoppel.

154. Defendants promised to pay Plaintiff for services rendered with the expectation that Plaintiff rely upon such promise and Plaintiff thereby relied on such promise to his detriment.

155. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

156. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

    A. Compensatory damages of not less than $150,000.00;
    B. Damages for lost wages and benefits, back pay, front pay (or reinstatement);
    C. Damages for humiliation, mental and emotional distress;
    D. Statutory damages, if applicable;
    E. Punitive damages and or liquidated damages where permitted by law;
    F. Attorneys' fees and costs of suit;
    G. Lawful interest including pre-judgment interest on lost wages;
    H. Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and
    I. Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of Plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying

on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (B) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:   April 25, 2017

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By: _____
TY HYDERALLY, Esq.
*For the Firm*

T:\l Law Offices of Ty Hyderally\McCallum Arthur\Pleadings\042517.COM.docx

13